SUPREME COURT.    Monroe General Term, September, 1860.
*Smith, Johnson* and *Knox*, Justices.

JAMES L. MUNSON and al., plaintiffs in error, v. THE PEOPLE,
defendants in error.

Form of an indictment for nuisance, in erecting and maintaining a dam, by which
lands were overflowed to the injury of the public health.
Where a defendant is found guilty on an indictment for a nuisance, in erecting
and maintaining a dam, and there is no averment in the indictment of a con-
tinuance of the nuisance, the court is not authorized to render a judgment
for the abatement of the nuisance. It can only inflict a personal punishment
upon the defendant. And where a judgment of abatement had been impro-
perly rendered by the Court of Oyer and Terminer, in such a case, the Su-
preme Court, on writ of error, reversed the judgment and remitted the
proceedings to the Oyer and Terminer, that a proper sentence might be
passed.

THIS case came up on writ of error to the Court of Oyer
and Terminer of Ontario county.    By the return to the writ,
it appeared an indictment had been found against the plaintiffs
in error in the following words:

*State of New York, Ontario County, ss:*

The jurors for the People of the State of New York and
for the body of the county, to wit: Henry Smith, &c., &c.,
being sworn and charged to inquire for the People of the said
State, and for the body of the county aforesaid, upon their
oath, present, that James L. Munson and Jacob Ansberger,
late of the town of Hopewell in the county aforesaid, on the
first day of June, in the year of our Lord one thousand eight
hundred and fifty-seven, with force and arms, at the town of
Hopewell in the county aforesaid, being possessed of a certain
mill and mill-dam, which said mill and mill-dam were built,
erected and maintained by the said James L. Munson and
Jacob Ansberger, across a certain outlet and common water-
course called "Canandaigua Outlet," near a certain place
called "Canandaigua," in said county, which continually and
during said time, and at all times of the year, hath run and

been used and accustomed, and of right ought, without any obstruction or impediment, to run out of a certain lake called "Canandaigua Lake," situate and being in said county within its natural banks, through the lands and premises of divers good and lawful citizens of the State of New York.

. And the jurors aforesaid, upon their oath aforesaid, do further present that the said James L. Munson and Jacob Ansberger, being so possessed of a certain mill and mill-dam with their appurtenances, situate near and adjacent to a certain common highway and public road, and the dwelling houses of divers of the good citizens of the State of New York, at the town and in the county aforesaid, on the first day of June in the year of our Lord one thousand eight hundred and fifty-seven, and on divers days before and since that day, by so building, erecting and maintaining the said mill, and the said mill-dam being so as aforesaid built, erected and maintained across the said outlet and common watercourse, as aforesaid, did injuriously, unlawfully and maliciously obstruct the water in its said ancient course, so that it did not run as it was used and accustomed to do, but by means thereof and thereby, injuriously, unlawfully and maliciously, did permit and cause the said water of the said mill-dam to overflow the natural banks of the said ancient and common watercourse, upon either side and on both sides of the said watercourse, and to flow back upon to a great distance, to wit: for the distance of five miles on either side and on both sides of the said watercourse, and overflow and cover and submerge the lands of the good and lawful citizens of the State of New York, there lying and situate adjacent thereto, on either side and on both sides of the said watercourse, so that by reason thereof the same could not be cultivated, by means whereof the mud, wood, leaves, brush, and animal and vegetable substances, and other filth, collected and brought down the channel of the said watercourse, and from the waters of the said lake, by the natural flowing of the waters, then became and were, during all the time aforesaid, collected and accumulated in large quantities in the channel of the said watercourse, by the

natural flowing of the waters, and on the lands and premises overflowed, covered and submerged, as aforesaid; and the said mud, wood, leaves, brush, and animal and vegetable substances, and other filth so there collected and brought down the channel of the said watercourse, and by the waters of the said lake, became and were, and still are very offensive, and the waters became and are corrupted, and by means whereof and from the action of the same upon the said mud, wood, leaves, brush, and the animal and vegetable substances, and other filth brought down the channel of the said watercourse, and upon the vegetable substances then growing upon the margin of the said watercourse, and upon the said lands overflowed and submerged as aforesaid, and by the alternate rise and fall of the water in the said pond and upon the said adjacent lands, the said mud, wood, leaves, brush, and the animal and vegetable substances and water, so as aforesaid collected, became stagnant, putrid and noxious, from whence unwholesome damps, fogs and smells did arise, whereby the air was greatly corrupted and infected, to the great damage and common nuisance of all the good and lawful citizens of the State of New York dwelling thereabouts, and all others passing and repassing on the said highway and near the said highway and near the said stagnant waters, and against the form of the statute in such cases made and provided, and against the peace of the People of the State of New York and their dignity.

And the jurors aforesaid, upon their oath aforesaid, do further present, that the said James L. Munson and Jacob Ansberger, at the town aforesaid, and in the county aforesaid, on the first day of June, in the year of our Lord one thousand eight hundred and fifty-seven, being possessed of a certain mill and mill-dam, which said mill and mill-dam were built, erected and maintained across a certain ancient and common watercourse called "Canandaigua Outlet," near a certain place called "Canandaigua," in said county, which continually and during the said time, and at all times of the year, hath run and been used to and accustomed and of right ought, without

Munson *v.* The People.

any obstruction or impediment, to run out of a certain lake called Canandaigua lake, situate and being in said county aforesaid, within its natural banks, through the lands and premises of divers good and lawful citizens of the State of New York.

And the jurors aforesaid, upon their oath aforesaid, do further present, that the said James L. Munson and Jacob Ansberger, being so possessed of a certain mill and mill-dam, with their appurtenances, situated near and adjacent to a certain common highway and public road, and the dwelling houses of divers of the good citizens of the State of New York, at the town and in the county aforesaid, on the first day of June, in the year of our Lord one thousand eight hundred and fifty-seven, and on divers other days, before and since that day, unlawfully, willfully and maliciously, did raise, elevate and increase the height of the said dam, so as aforesaid built, erected and maintained across the said ancient watercourse, by placing, erecting, fixing and building upon the top thereof, certain timbers, boards, gravel, earth and stones, by reason of which and whereby the said dam was unlawfully, willfully and maliciously raised, elevated and erected above the ancient level of the said dam, to a great height, and extended on the top of the said dam to a great distance, to wit: across the said ancient watercourse.

And the jurors aforesaid, upon their oath aforesaid, do further present, that the said James L. Munson and Jacob Ansberger, from the said first day of June, in the year one thousand eight hundred and fifty-seven, and before and since that time until the taking of this inquisition, unlawfully, willfully, knowingly and injuriously, did continue, and respectively doth now unlawfully, willfully, knowingly and injuriously continue the said unlawful and injurious elevation and height of the said dam across the ancient and common watercourse as aforesaid, by means whereof and whereby, the water flowing in the said Canandaigua outlet from the rains and from the Canandaigua lake, was unlawfully, willfully, knowingly and injuriously stopped, dammed up and obstructed in its said ancient course,

so that it did not run as it used and was accustomed to do, but by means thereof and thereby, the said James L. Munson and Jacob Ansberger, did permit and cause the water of the said mill-dam to overflow the natural banks of the said ancient and common watercourse, upon either side and on both sides of the said watercourse, and to flow back to a great distance, to wit: for the distance of five miles on either side and on both sides of the said watercourse, upon and overflow, cover and submerge the lands of the good and lawful citizens of the State of New York, there lying and situate adjacent thereto, on either side and on both sides of the said watercourse, so that by reason thereof the same could not be cultivated, and by means whereof the mud, wood, leaves, brush, and animal and vegetable substances, and other filth, collected and brought down the channel of the said watercourse, and from the waters of the said lake, by the natural flowing of the waters, they became and were, during all the time aforesaid, collected and concentrated in large quantities in the channel of the said watercourse, by the natural flowing of the waters, and upon the lands and premises overflowed, covered and submerged, as aforesaid; and the said mud, wood, leaves, brush, and animal and vegetable substances, and other filth so there collected and brought down the channel of the said watercourse, and by the waters of the said lake, became and were, and still are, very offensive, and the waters became and are corrupted; and by means whereof and from the action of the sun upon the said mud, wood, leaves, brush, and the animal and vegetable substances, and other filth collected and brought down the channel of the said watercourse, and the vegetable substances then growing upon the margin of the said watercourse, and upon the said land so overflowed and submerged, and by the alternate rise and fall of the water in the said pond and upon the said adjacent lands, the said mud, wood, leaves, brush, and the animal and vegetable substances and water, so as aforesaid collected, became stagnant, putrid and noxious, from whence unwholesome damps, fogs and smells did arise, whereby the air was greatly infected, to the great damage and common

nuisance of all the good and lawful citizens of the State of New York dwelling thereabout, and all others passing and repassing on the said highway and near the said stagnant waters, and against the form of the statute in such cases made and provided, and against the peace of the People of the State of New York and their dignity.

EDWIN HICKS, *District Attorney.*

The defendants pleaded not guilty, and the issue came on to be tried before Hon. E. Darwin Smith, justice of the Supreme Court, and two associate justices, on the 15th November, 1859. After the testimony was closed, the presiding judge explained to the jury that the first count was for erecting, maintaining and continuing a dam which obstructed the flow of the water in the outlet, and thereby created alleged nuisance.

That the second count assumed the existence of a dam, and was for raising the height of the dam, and thereby creating the difficulty complained of.

The judge further instructed the jury that the evidence did not warrant them in convicting the defendants under the second count in the indictment, and that their deliberations were to be confined to the evidence applicable to the first count of the indictment.

The jury, after being charged fully by the court upon the questions involved in the case, retired for consultation, and afterward rendered a verdict by which they found the defendants guilty.

Upon this verdict, judgment was then entered in the following words:

"Judgment ordered, that the defendants abate the nuisance at their own cost, within sixty days; and that, in default thereof, process issue to the sheriff of the county, commanding him to abate the nuisance at the cost of the defendants."

*H. O. Chesebro,* for the plaintiffs in error, claimed that the judgment rendered by the Court of Oyer and Terminer upon the conviction, was unauthorized by the conviction and erro-

neous ; that there being no averment in the first count that the defendants continued to maintain the dam at the time of the indictment, no judgment of abatement could be rendered ; citing 1 *Chitty's Cr. Law,* 716, *marg. ; 2 Id.,* 607, *note a,* 610 *to* 618 ; 3 *Arch. Cr. Pl.,* 609, 651, 6*th ed.* ; 12 *Petersdorff Abr.,* 795, *marg. ; Wharton's Cr. Law,* § 2368 ; 1 *Russell on Crimes,* 331, *marg. ;* 4 *Black. Com.,* 168, *note* 12 ; *King v. Stead,* 8 *Term R.,* 142 ; *The King* v. *Pappineaux,* 2 *Strange,* 686 ; 7 *Term R.,* 467 ; 10 *Foster R.,* 279 ; 21 *Maine R.,* 84 ; 16 *Ala. R.,* 144 ; 16 *Conn. R.,* 54.

*Wm. H. Smith* (District Attorney), for defendants in error.

*By the Court,* KNOX, J. At the Oyer and Terminer, the jury were instructed by the presiding justice, that the evidence did not warrant a conviction upon the second count in the indictment, which was for a nuisance. A person may be indicted for causing, erecting, and *maintaining* a nuisance ; and he may also be indicted for *continuing* a nuisance, created and maintained by another, or which was created by himself. They are distinct offenses. It evidently would not be a bar to an indictment for *continuing* a nuisance, that the party had been convicted of erecting and maintaining the same nuisance. (*The King* v. *Stead,* 8 *Durn. & East,* 142.) In *Staple* v. *Spring and al.* (10 *Mass. R.,* 75), SEWALL, J., says : "An action of the case lies against him who erects a nuisance, and against him who continues a nuisance erected by another. The occupant as well as the owner of the place, suppose a house or mill, erected to the nuisance of another, is liable in the action of the case, which may be brought by the successive owners and occupants of the place where the injury is sustained. In short, the continuance, and every use of that which is, in its erection and use, a nuisance, is a new nuisance, for which the party injured has a remedy for his damages. And although after judgment and damages recovered in an action for erecting a nuisance, another action is not to be maintained for the *erection,* yet another action will lie for the continuance of the same nuisance."

Munson *v.* The People.

The same has been held in this State. (2 *Kern. R.*, 492 ; 29 *Barb. R.*, 294; see also *Bouvier Inst.*, 2d vol., 577.) These cases are cited, and many more might be, to show that, both in criminal and civil actions, the distinction above mentioned is well recognized. Indeed, no authorities are requisite, for it exists in the nature of things.

The count, in the indictment upon which the defendants were convicted, being the first, was for having erected and maintained a nuisance. There is no averment that it *continued* down to the time of the indictment. For aught that appears in the count, the nuisance had ceased to exist when the indictment was found, and that the only object of the people was to punish the defendants for what they had done, and not for what they continued to do.

The averments in regard to the erection of the nuisance are all in the past tense.

The judgment upon the verdict was, "That the defendants abate the nuisance, at their own cost, within sixty days, and that, in default thereof, process issue to the sheriff of the county, commanding him to abate the nuisance at the cost of the defendants."

The defendants allege that this judgment was unauthorized by the conviction, and erroneous. I am of that opinion. Suppose the fact to be, as it may be, that when the indictment was found, the dam had been pulled down, and the nuisance abated? Obviously, the sheriff, with the precept to abate what did not exist, would be sent on a "fool's errand," and the defendants would go wholly unpunished. It might be true in a case where a person was indicted for continuing a nuisance, that before the trial and conviction, the nuisance had been abated, so that a mere judgment to abate would not punish the defendant. There would be, however, congruity upon the record ; besides, in such a case, upon proof that the nuisance had been abated, the court might order the defendants to be fined or imprisoned. Here, then, is manifest incongruity.

The object of the prosecution is to remove the nuisance, and to that end alone the sentence is in general directed.

It is, therefore, usual, when the nuisance in the proceedings is stated as continuing, in addition to a fine, to order the defendant, at his own costs, to abate the nuisance." (2 *Strange*, 686; *Black. Com., vol.* 2, *Book* 4, *p.* 167; *Sharswood's ed. in note.*)

The case before cited from Term Reports was this: William and John Stead were indicted for erecting a wall across a highway, and found guilty at the Quarter Sessions, which directed a precept to the sheriff to abate the nuisance, and afterward the same court adjudged that the defendants be fined six pence each for said nuisance and be discharged. A writ of error was brought, and it was assigned for error that the court below had not ordered that the nuisance be abated. *France* urged that such a judgment was proper, though the indictment did not charge the nuisance as *continuing*. *Lambe, contra,* was stopped by the court.

Lord KENYON, Ch. J.: " When this case came before us on the former occasion, we intimated a strong opinion that the judgment given below was not erroneous, and I am now clearly of the same opinion. When a defendant is indicted for an existing nuisance, it is usual to state the nuisance and its continuance down to the time of taking the inquisition; it was so stated in *R.* v. *Pappineau, et adhuc existit;* and, in such cases, the judgment should be that the nuisance be abated. But, in this case, it does not appear in the indictment that the nuisance was then in existence; and it would be absurd to give judgment to abate a supposed nuisance which does not exist. If, however, the nuisance still continue, the defendant may be again indicted for continuing it.

But if it be, it seems extraordinary that the prosecutor did not adopt the usual form of indictment. There is something of novelty indeed in another part of these proceedings, for it appears, that before judgment was given at the sessions, a precept was issued to the sheriff in the nature of an execution; then afterward a proper judgment was given, adapted

to the circumstances of the case. The defendants having erected a nuisance, were fined by the court, but as there was no existing nuisance (for none such then appeared), of course no judgment was given to abate it.

GROSE, J., of the same opinion.

LAWRENCE, J. What was said by Mr. J. REYNOLDS in *R. v. Pappineau* is decisive, " that every judgment should be adapted to the nature of the case; when the erection is the nuisance, there ought to be a demolition; that is, where the nuisance exists at the time of the judgment. But in this case, the charge only is, that the defendant at a time which was past, had erected a wall across the highway, which was a nuisance; but to adjudge that a nuisance which does not exist, should be abated, would not be a judgment adapted to the nature of the case. With respect to proceedings on writs of assize of nuisance, &c., those are cases in which from the nature of the proceedings the nuisance is supposed still to continue."

It is to be regretted that the indictment did not contain a count for *continuing* the nuisance, if such were the fact, because the view here taken may render it necessary, perhaps, to have another trial on a new indictment, alleging such offense. But on another trial, not only the rights of the public may be protected, but the property of the defendants saved from that total destruction, with which it is threatened by the judgment pronounced in this case. A mill-dam, owned by the defendants, was the nuisance. Whether its demolition is necessary, to get rid of the nuisance, is very doubtful, on the evidence. It would seem, rather, that it could be kept up at some height, so as to furnish water to the defendant's mill, without producing the bad effects complained of. Were the sheriff to execute the precept, he might find it very difficult to decide how much, if any, of the dam, he might allow to remain. But on a new trial, if the defendants shall be convicted of continuing the nuisance, the judgment may be, that only so much of the dam as causes the nuisance be prostrated.

This may be determined by the jury upon the evidence given upon that question. See 1 *Russell on Crimes, p.* 331.

"As the Oyer and Terminer is a permanent and continuous court, so that each session of such court, in any county, instead of being a distinct and independent court, the existence of which commences the first, and terminates with the last day of the session, is a mere term of the Oyer and Terminer for that county" (*Quimbo Appo* v. *The People*, 20 *N. Y. R., p.* 531, SELDEN, J.), the proper judgment at the next session of the court may be pronounced upon the conviction under this indictment.

The judgment of the Oyer and Terminer must therefore be reversed, and proceedings remitted to pass proper sentence.

---

ALBANY OYER AND TERMINER. October, 1857. Before *Harris*, Justice of the Supreme Court, and *William R. Tanner* and *Farley Fisher*, Associate Justices.